Railroad. The Petries owned the east half of the northeast quarter, and the entire south half· of the section. This made a lot of four hundred acres, of which eighty acres lay north of the middle of the section and three hundred and twenty south of it. The deed to Barns conveys " the east end of the south half of the above described tract of four hundred acres, being one hundred acres of land as first aforesaid." There is no ambiguity in this description. The south half of the four hundred acres is the southerly two hundred acres of the south half of the section, or a parcel of land one hundred, rods wide running across the section from east to west. This, if the section is of full dimensions, would make the most northerly portion of it sixty rods south of the middle of the section. It is evident that but a small portion, if any, of the land described in the declaration is covered by this deed. And as there is no evidence in the case tending to identify the boundaries at all, the deed was not available as a source of title upon the facts as returned.

We do not think it necessary to pass upon the other points raised.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.

---

# Charlotte De Vries and Peter De Vries v. Charles A. Conklin.

*Married woman's contract: Surety.* The statute which enables a married woman to make contracts affecting her own estate, is to be liberally construed to effectuate its purpose.—*Tillman v. Shackleton, 15 Mich., 447 ; Burdeno v. Amperse, 14 Mich., 97 ; Watson v. Thurber, 11 Mich., 457.* But a contract by a married

woman to make herself personally liable for the debt of another, when no consideration moves to her, is not within the purpose of the act.

*Heard January 9. Decided January 10.*

Error to Lenawee Circuit.

This was an action of *assumpsit* brought by Charles A. Conklin in the Circuit Court for the County of Lenawee, against Peter De Vries and Charlotte De Vries upon a promissory note, signed by both defendants. It appeared upon the trial that Charlotte De Vries was the wife of the other defendant; that the note was voluntarily executed and that the sole consideration for it was the discontinuance of a suit in *assumpsit* then pending in a justice court, between the plaintiff and Peter De Vries, one of the defendants.

The court found for the plaintiff, for whom judgment was entered, and the cause now comes into this court by writ of error.

*Eldredge & Walker,* for plaintiffs in error.

I. At common law it is conceded that the wife would not have been liable on such a contract.—*Reeve's 'Dom. Rel., p. 182 (*98); Tyler on Inf. and Cov., p. 315, 317.*

II. Has the statute changed the rule of the common law?—*2 C. L. § 3292–5, p. 966.* If it has done so it is very far from being a statute for the protection of the rights of married women. Such a construction will not readily be accepted if there is doubt.—*Parsons v. The People, Oct. Term, 1870.*

III. The decisions of other states would seem to hold that similar statutes were not considered as imposing such a liability upon a married woman in such cases. (*a*) That such an obligation would not create a charge upon her separate estate:—*Yale v. Dederer, 18 N. Y., 265;* s. c., *22 id., 450; Brookings v. White, 49 Me., 479; Beals v.*

DeVries v. Conklin.

*Cobb, 51 Me., 348; Shannon v. Carmey, 44 N. H. 592; Bartlett v. Bartlett, 4 Allen, 440; Crane v. Kelley, 7 Allen, 250; Frary v. Booth, 37 Vt., 78; Wolf v. Van Meter, 19 Iowa, 134; Cotts v. McKee, 26 Ind., 223; Manchester v. Sohler, 47 Barb., 155; Matthewmaier's case, Law Rep., 3 Eq., 781; Tracy v. Keith, 11 Allen, 214; Jones v. Cross-thwaite, 17 Iowa, 393.* (b) A married woman cannot make a valid accommodation note.—*Scudder v. Geri, 18 Abb. Prac., 228; s. c., 28 How. Prac., 155.*

*Geddes & Miller*, for defendant in error.

I. The reason for any legal disability ceasing, the disability itself should cease. The reason for former restrictions upon the ability of married women to contract arose from the wife's supposed legal merger in her husband. This old doctrine of merger of wife's legal existence in husband has been exploded in this State.—*Burdeno v. Amperse, 14 Mich., 97.*

II. In England, by a system of fictions and equity decisions, married women had nearly or quite same power as a *femme sole* in regard to their separate estates. (a.) They could give promissory note for borrowed money, and payment could be enforced out of their separate estates.— *17 Vesey, 366.* (b) They could accept accommodation bill for another's benefit, and equity would enforce it.—*Mss. Case, quoted in Chitty on Bills, page 21, note E.* (c) They could join with husband in promissory note to secure husband's debts, and equity would enforce it.—*9 Vesey, 189, 486; 11 Vesey, 209.*

III. The peculiar common law disabilities of married women having been removed in this State, no reason remains for calling aid of equity courts to enable a married woman to make, or any one interested to enforce any such contract

22 mich.—33.

as married women could make, or such as could be enforced by equity.—*Burdeno v. Amperse, 14 Mich., 97.*

IV. This court has declared that our statutes, relative to married women, were not designed to keep alive the old common-law system of their legal nonentity, and disability to contract, but to establish a new and better system, and that our statutes should be liberally construed to carry out such intent. See opinion of Cooley J. in *Tillman v. Shackelton, 15 Mich., 457.*

V. A mortgage is a weightier and graver contract than a promissory note. It is at once a promise to pay and security for fulfillment of the promise. The mortgagor not only creates a lien upon mortgaged premises, but is personally liable for payment of any deficit in proceeds of mortgaged property to satisfy the debt.—*Watson v. Thurber, 11 Mich., 457.* It is contended that the legal power to make such mortgage for such purpose, includes within it a power to make the note in question for the same purpose.

Cooley, J.

The question presented on the merits in this case is, whether a married woman can be personally liable in this state on a promissory note which she has signed as surety for her husband, and where the sole consideration was the pre-existing debt of the husband.

Our statute has deprived the husband of those rights in the property of the wife which the common law conferred upon him, and has declared that her real and personal estate which she has at the time of her marriage, or which she may thereafter acquire, shall be and remain hers, and may be contracted, sold, transferred, mortgaged, conveyed, devised, and bequeathed by her in the same manner and with the like effect as if she were unmarried.—*Comp. L., p. 966.*

We have construed this law liberally with a view to effectuate its general purpose; and it belongs to a class of remedial statutes which we think should have such construction.     We have sustained contracts made by married women for the purchase of property on credit; though, perhaps, they might not come strictly within the terms of the statute.—*Tillman v. Shackleton, 15 Mich., 447.*     We have held, also, that husband and wife may make conveyances of lands directly to each other.—*Burdeno v. Amperse, 14 Mich., 97.*     Such contracts and conveyances may presumptively be beneficial to the wife, and they relate to the sole interests which the statute designs to protect, and in respect to which it was meant that all her common-law disabilities should be wholly removed.     We have also held that a married woman may mortgage her lands for the debt of her husband.—*Watson v. Thurber, 11 Mich., 457.* A conveyance by mortgage comes clearly within the power given her by the statute, and she must judge for herself whether it is for her interest to give it or not.

But the statute neither in terms authorizes a married woman to make herself liable personally for the debt of another, nor where no consideration moves to her can it be presumptively for her benefit.     It was no part of the design of the statute to relieve her of common-law disabilities for any such purpose.     These disabilities are removed only so far as they operated unjustly and oppressively; beyond that, they are suffered to remain.     Having been removed with the beneficent design to protect the wife in the enjoyment and disposal of her property for the benefit of herself and her family, the statute cannot be extended by construction to cases not embraced by its language, nor within this design.

What we have said here has no reference to the power of a married woman to charge her separate estate in equity.

The estate which a married woman may hold generally and control under the statute is not separate estate, technically so called, in equity; and it is subjected to the wife's obligations through common-law rules, as modified and made applicable by statute, and not by the aid of the court of chancery. But the present suit has no reference to the ownership by the wife of any estate whatever; nor are we informed by the record that she possesses any. The suit is brought to obtain a personal judgment against her on a demand created without any reference to her ownership of property, either present or prospective, except so far as the parties may be supposed to have contemplated her pecuniary ability to respond should judgment be obtained upon it. We cannot find in the statute any authority conferred upon her to create such a demand, and we think the court erred in holding her liable.

The judgment must be reversed, with costs, and a new trial ordered. In the circuit court the plaintiff, of course, will be allowed to amend so as to proceed against the husband alone if he sees fit.

The other Justices concurred.