# FIELDS *v.* GWYNN.

MARRIED WOMEN; EQUITABLE SEPARATE ESTATES; REMAINDERS; DEEDS OF TRUST; MULTIFARIOUSNESS.

1. The married woman's act of 1869 (R. S. D. C., Secs. 727–9), creating a separate legal estate in married women, does not by implication prevent the creation by deed or will of an equitable separate estate in a married woman. So that a deed of settlement which excludes a husband from any interest in the estate conveyed, and provides that the wife shall "have no powers to alienate, transfer, sell or encumber" the estate, "nor to dispose of the same by deed or will, nor by any mode of alienation or anticipation," creates a valid equitable estate for life in the wife, which is not within the common-law rule avoiding general restraints of alienation.

2. A wife having such an equitable separate estate cannot bind the same for the payment of her debts or those of her husband, and a deed of trust on such estate by herself and her husband to secure the payment of their joint promissory note, is void.

3. A deed of land in trust for the benefit of a married woman for life, and if she shall have issue living at the time of her death, in trust for such issue and their heirs as tenants in common, and if she shall have no issue living at the time of her death, in trust for the settlor and his heirs, creates a vested remainder in the issue of the married woman who were then living, subject to be opened to let in any child that might be born to her afterwards.

4. *Quære*, whether, in such case, by " issue living at her death " are meant the children of the life tenant as a class, or whether " issue " includes the children of a child who may pre-decease the life tenant.

5. Mere uncertainty whether a vested remainder in land may be divested before the determination of the preceding estate, will not afford ground for refusing foreclosure and sale under a mortgage by the remaindermen, although it might affect the price to be realized from such sale; *following* Bryan v. May, 9 App. D. C. 383.

6. Where, on a demurrer to a bill of complaint against a husband and wife and their children for an account to show the amount due on a debt of the husband and wife; for the foreclosure of a deed of trust of land given by all of the defendants to secure the payment of such debt by sale of the land, and in event of a deficiency in the proceeds of the sale to pay the debt, for a personal decree for such deficiency against the husband and wife, it appears that the husband has no interest in the land, that his wife has an equitable separate estate for life, not subject to alienation, while the children have vested remainders, the bill is bad for multifariousness and the demurrer is properly sustained, but the bill will be dismissed without prejudice to the institution of other proceedings.

No. 1064. Submitted November f, 1901. Decided December 3, 1901.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia in a suit in equity sustaining a demurrer to and dismissing a bill for the foreclosure of a deed of trust, etc. *Modified and affirmed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree dismissing a bill for the foreclosure of a lien secured by a deed of trust.

On July 31, 1873, William G. H. Newman and his wife, Mary A. Newman, made and delivered to Henry D. Beam a deed conveying, upon certain trusts hereafter mentioned,

parts of lots 2 and 3 in square number 27 in the city of Washington. Said deed concluded in the following words:

" To have and to hold all and singular the above-described premises with the appurtenances unto the said party of the second part, his heirs, successors and assigns forever. In and upon the trusts, nevertheless, hereinafter mentioned and declared, that is to say, for the sole and separate use of the said Ella P. Gwynn, wife of the said R. C. Gwynn, for and during the term of her natural life, free from the control, disposal, debts and liabilities of her said husband, and to, and to permit the said Ella P. Gwynn to use and occupy the above-described real estate and premises, and the rents, issues and profits thereof, to take, collect, receive and apply, to and for her sole and separate use, free as aforesaid. But the said Ella P. Gwynn shall nevertheless have no powers to alienate, transfer, sell or encumber the said described real estate and premises, nor to dispose of the same by deed or will nor by any mode of alienation or anticipation; and if the said Ella P. Gwynn shall have issue living at the time of her death, then the said party of the second part, shall hold the said described real estate and premises, in trust, to and for the use of the said issue and their heirs as tenants in common, but if the said Ella P. Gwynn shall have no issue living at the time of her death, then the said party of the second part, shall hold the said described real estate and premises, in trust, to and for the use of the said William G. H. Newman, party of the first part, his heirs and assigns. And the said William G. H. Newman, party of the first part, for himself, his heirs, executors and administrators doth hereby covenant, promise and agree to and with said party of the second part, trustee as aforesaid, his heirs and assigns, that he, the said party of the first part, shall and will warrant and forever defend the said described real estate and premises and appurtenances, unto the said party of the second part, trustee as aforesaid, his heirs and assigns, from and against the claims of all persons claiming or to claim the same, or any part thereof, by, from, through or under him, them or either of them."

On March 17, 1898, Ella P. Gwynn, beneficiary of the foregoing trust, joined by her husband, Raphael C. Gwynn, and her children, Mary R., William C., Raphael N., and Henry M. Gwynn — Mary R. being then married to Johnson Hellen, was joined by him — conveyed the said premises to Thomas M. Fields and Moses R. Walter in trust to secure the payment of a note for $11,000, executed by them, on the same date, to the Ullman Goldsborough Company.

The said trust deed is in the ordinary form providing for sale by the trustees in case of default, and so forth. It also provides for the maintenance of insurance upon the improvements for the benefit of the trustees, by way of further security, and makes the payment of premiums thereon and of taxes on the part of the trustees or beneficiaries, an additional lien, etc.

The bill to foreclose this incumbrance was filed June 26, 1900, by the trustees, and the Wilson Distilling Company, assignee of the note, which had become due and remained unpaid, against Ella P. Gwynn and her husband, Raphael C. Gwynn, and against their children, hereinbefore named, as having joined in the conveyance to the said trustees, and Henry D. Beam, trustee. The bill alleged that one of the defendants, Henry M. Gwynn, was, at the time of the institution of the suit, a minor of the age of fifteen years. He subsequently appeared in open court and, upon his request, his father, Raphael C. Gwynn, was regularly appointed his guardian *ad litem*. An amendment to the bill avers that the children aforenamed " are the only issue of Ella P. Gwynn who have ever been born."

The bill sets out the original conveyance from Newman and wife to Beam, trustee, the note for $11,000 executed by both Ella P. and Raphael C. Gwynn, and the trust deed to secure the same, and alleges the failure to pay the note or any of the interest thereon.

The prayers of the bill are for a special account, if necessary, of the amount due by said Ella P. and Raphael C. Gwynn; for foreclosure of the trust deed unless the same be paid within a certain reasonable time; for the appoint-

ment of trustees to sell the said premises under the decree of foreclosure; for appointment of a guardian *ad litem* for the infant defendant, Henry M. Gwynn; and in case of deficiency of the proceeds of sale to pay the said note, interest in full and costs, for a decree for the same against the said Ella P. and Raphael C. Gwynn.

The defendants, excepting said minor, Henry M. Gwynn, entered a demurrer to the bill, which was sustained; and, complainants asking no leave to amend, the bill was dismissed.

*Mr. Thomas M. Fields* and *Mr. Milton Strasburger* for the appellants:

1. The married women's acts conferred upon Ella P. Gwynn the power of alienation which the deed denies. The force of these acts overrides the restraints of the deed. The acts, in other words, practically destroy such restraints upon equitable separate estates of married women, and, perhaps, such estates in favor of the statutory separate estates thereby created. Restraints on alienation are void at common law. This rule applies as well to life estates as to estates in fee-simple. *Warner* v. *Rice,* 66 Md. 436; *Brandon* v. *Robinson,* 18 Ves. 429; *Rockford* v. *Hackman,* 9 Hare, 480; *Pace* v. *Pace,* 73 N. Car. 119; *Tillinghast* v. *Brandford,* 5 R. I. 205; Perry on Trusts, Sec. 671. Restraints upon the power of a married woman to dispose of her separate equitable estate were allowed under the common law in order to protect her estate from the debts and liabilities of her husband and to render the estate free from his control. *Tullet* v. *Armstrong,* 4 Myl. & Cr. 377. The law favors creditors, and therefore will not permit property to be so limited as to remain in a man for life free from the incidents of property. *Graves* v. *Dolphin,* 1 Sim. 66; *Green* v. *Spicer,* 1 Russ. & Myl. 395; *Lear* v. *Leggett,* 2 Sim. 479; *Brandon* v. *Robinson,* 18 Ves. 429. This end being subserved by the married women's acts of 1869 and 1896, the reason for the *exception* under the common law, which permitted restraints on alienation of

a married woman's separate estate, no longer exists, and such exception therefore ceases, causing the rule which forbids restraints on alienation to operate as in other cases. This would have the same effect as the operation of the common-law rule that if the married woman, having a separate estate, survives her husband, the restraint upon the disposal of the estate, notwithstanding its general character, ceases with the coverture. Schouler's Dom. Rels., Sec. 127; *Smith* v. *Starr,* 3 Whart. 624; *Dooley* v. *Webb,* 3 Coldw. 599; *Thomas* v. *Harkness,* 13 Bush, 23; Perry, Trusts, Sec. 652; Schouler's Hus. and Wife, Sec. 234; *Jones* v. *Salter,* 2 R. & M. 208; *Barton* v. *Briscoe,* 1 Jac. 60.

2. Under the terms of the deed in trust the issue of the life tenant, as each came *in esse,* took a vested remainder subject to open and let in after-born children. The issue of Ella P. Gwynn are and ever since their births have been ready to take immediate possession at the moment of her death, until which time their rights are vested, the mere enjoyment of possession being postponed. They take a defeasible fee at the least. It is the uncertainty whether there will ever be a *right* to enjoyment and not the uncertainty of enjoyment that universally distinguishes a contingent from a vested remainder. As to contingent remainders, see *Scofield* v. *Olcott,* 120 Ill. 362, 370; *Female Academy* v. *Sullivan,* 116 Ill. 375; *Phipps* v. *Ackers,* 9 C. & F. 583; *Weston* v. *Weston,* 125 Mass. 268; *Ducker* v. *Burnham,* 146 Ill. 9. As to vested remainders, see Fearne on Remainders; *Smith* v. *West,* 103 Ill. 332, 337; *Scofield* v. *Olcott,* 120 Ill. 362, 370; 4 Kent Comm. 202; *Hawley* v. *James,* 5 Paige, 466. The following cases also clearly establish the rules for determining whether a remainder is vested or contingent: *Hellman* v. *Hellman,* 129 Ind. 59; *Van Dyke* v. *Vanderpool,* 14 N. J. Eq. 198, 206; *Scott* v. *West,* 63 Wis. 527, 564; *Vandewalke* v. *Rollins,* 63 N. H. 460; *Mercantile Bank* v. *Ballard,* 83 Ky. 481. See also Fearne, Cont. Rem., 216, 7th ed.; 2 Ves. Jr. 357; Challis, The Law of Real Property, 56; 2 Blackst. Comm. 169; 4 Kent Comm. 202, 203; Williams on Real Property, 191, 207; 2 Cruise Dig. 270; *Parkhurst* v. *Smith,* Willes,

337; Fearne on Rem. 277, 278; *Vanderheyden* v. *Crandall,* 2 Den. 18. Where there is a devise to a class of persons, to take effect in enjoyment at a future period, the estate vests in the persons as they come *in esse,* subject to open and let in others as they are born afterwards. Rice on the Modern Law of Real Property, 663, citing *Johnson* v. *Valentine,* 4 Sandf. (N. Y.) 45; *Doe* v. *Provost,* 4 Johns. (N. Y.) 61; *Chew's Appeal,* 37 Pa. St. 28; *Doe* v. *Ward,* 9 Ad. & El. 582, 607; *Hancock* v. *Hancock,* 4 Dow. 203; *Doe* v. *Newell,* 1 M. & S. 334; *Bromfield* v. *Crowder,* 1 B. & P. (N. R.) 326; *Phipps* v. *Ackers,* 9 C. & F. 583; *Doe* v. *Prigg,* 8 Barn. & C. 235; *Manning* v. *Butdorff,* 5 Pa. St. 505; *Gold* v. *Judson,* 21 Conn. 623; *Myers* v. *Adler,* 6 Mackey, 218; *Croxall* v. *Shererd,* 5 Wall. 288; *Goodtitle* v. *Whitby,* 1 Burrow, 228; *Wendell* v. *Crandall,* 1 Comst. 491; *Doe* v. *Lea,* 3 Durnford & East, 41; *Moore* v. *Lyons,* 25 Wend. 119; *Doe* v. *Underdown,* Willes, 293; *Etter's Estate,* 23 Pa. St. 381; *Vanderheyden* v. *Crandall,* 2 Den. 18; *Boraston's Case,* 3 Coke, 51; 4 Kent Comm. 202; Williams on Real Property, 207; *Daniel* v. *Whartenby,* 17 Wall. 639; *Thaw* v. *Ritchie,* 136 U. S. 546; *McArthur* v. *Scott,* 113 U. S. 379; *Doe* v. *Considine,* 6 Wall. 458; *Moore* v. *Lyons,* 25 Wend. 119; *Blanchard* v. *Blanchard,* 1 Allen, 223; *Cropley* v. *Cooper,* 19 Wall. 167; *Poor* v. *Considine,* 6 Wall. 458; *Rudy's Estate, Hudson App.,* 185 Pa. St. 359 (1898); *Hollister* v. *Butterworth,* 71 Conn. 57; 40 Atl. Rep. 1044 (1898). Words in a will, directing land to be conveyed to or divided among remaindermen at the expiration of a particular estate, are to be presumed, unless clearly controlled by other provisions, to relate to the beginning of enjoyment by remaindermen and not to the vesting of, the title in them. *McArthur* v. *Scott,* 113 U. S. 340. Where an estate is declared by a marriage settlement " to the parents during their natural lives, and then to the use and behoof of such child or children as may be procreated between them, and to their heirs and assigns forever," this is a remainder in fee to the children that ceases to be contingent upon the birth of the first child and opens

to let in after-born children, and an executory limitation over upon the death of the issue during the lifetime of the parents does not change the nature of the preceding limitation so as to make it contingent. *Carver* v. *Astor,* 4 Pet. 1; *Crane* v. *Morris,* 6 Pet. 598; *Kelly* v. *Morris,* 6 Pet. 622. In *Richardson* v. *Penicks,* 1 App. Cas. D. C. 261, the devise was to " Jane Lawrie for life, and after her death to my son, George R. Lawrie, upon his attaining his majority." Held, that George R. Lawrie took a vested remainder, to come into enjoyment upon arrival at majority, and subject to defeasance by his death before hers. See also *O'Brien* v. *Dougherty,* 1 App. D. C. 148; *Marshall* v. *Augusta,* 5 App. D. C. 183; *Craig* v. *Rowland,* 10 App. D. C. 402; *Hauptman* v. *Carpenter,* 16 App. D. C. 524. The authorities hold that the interests of the issue of Ella P. Gwynn are subject to alienation, and that the appellants are entitled to have the same foreclosed under the mortgage executed by such issue. Tiedeman on Real Property, Sec. 399, citing 2 Washb. on Real Property, 553; 1 Prest. Est. 75; Williams on Real Property, 252; *Pearce* v. *Savage,* 45 Me. 101; *Blanchard* v. *Brooks,* 12 Pick. 47; *Gliddon* v. *Blodgett,* 38 N. H. 74; *Jackson* v. *Sublett,* 10 B. Mon. 467; *Swett* v. *Thompson,* 149 Mass. 302. As to the power of the court to order the sale of vested remainders, see *Thaw* v. *Ritchie,* 5 Mackey, 221; *Baxter* v. *Baxter,* 62 Me. 543; *Copper* v. *Hepburn,* 15 Gratt. 563; *Croxall* v. *Shererd,* 5 Wall. 288; Fearne on Remainders, 216; 4 Kent Comm. 205. A contingent interest is capable of sale, assignment, or devise. *Harris* v. *McElroy,* 45 Pa. St. 216; *Noyson* v. *Tyler,* 80 Ky. 358; *Robertson* v. *Wilson,* 38 N. H. 48; *Wilcox* v. *Daniels* (R. I.), 2 N. E. Rep. 507; *Stover* v. *Eyclesheimer,* 46 Barb. 84; 1 Preston Est. 751; *Fortesque* v. *Sattlethwait,* 1 Ired. (N. C.) 566. A contingent interest is devisable by will, may be released, may pass by the bargain and sale of commissioners of bankruptcy, may be bound or extinguished by estoppel, and may be bound, in equity, by contract. Preston on Estates, Vol. 1, 2d ed.; *Putnam* v. *Story,* 132 Mass. 211. Contingent estates,

it seems, are assignable in equity. Fearne on Remainders, 365, Sec. 5. An assignment of a contingent interest, even in lands of inheritance, for valuable consideration, may be carried into execution by a court of chancery upon the ground of its being such a contract or agreement of which the court may think fit to decree a specific performance. *Helps* v. *Hereford,* 2 Barn. & Ald. 242. There is nothing in the law to prevent the conveyance of a mere expectancy or possibility. *Beckley* v. *Newland,* 2 P. Wms. 182; *Hobson* v. *Trevor,* 2 P. Wms. 91; *Fitch* v. *Fitch,* 8 Pick. 480; *Clayton* v. *Duke of Newcastle,* 2 Ch. Cas. 112; *Wiseman* v. *Roper,* 1 R. in Chanc. 158. Sustained in equity. *Bayler* v. *Commonwealth,* 40 Pa. St. 37; *Lyle* v. *Wynn,* 8 Eng. Can. Chan. 406; *Mitchell* v. *Winslow,* 2 Story, 630.

3. Under section 808, R. S. D. C., 14 Stat. L. 404, which provides that in a proceeding to enforce any lien in equity the decree shall adjudge that the plaintiff recover his demand against the defendant and have execution thereof as at law, appellants are entitled to a personal decree against Raphael C. Gwynn and Ella P. Gwynn for the amount of the demand or any deficiency that may arise after sale. That this section 808 applies to suits to foreclose mortgages, see *Freeman* v. *Dodge,* 3 MacA. 929; 106 U. S. 445; *Shepperd* v. *Pepper,* 133 U. S. 626. This is true even though the appellee Raphael C. Gwynn be held to have no title in the realty covered by his mortgage, for he is estopped from asserting want of title. *Morris* v. *Wheat,* 8 App. D. C. 379; *Hilton* v. *Otoe County National Bank,* 26 Fed. Rep. 202. As to the wife, the personal decree should be ordered to be satisfied out of her separate estate and decreed to be a lien upon her interest in the property involved. The deed of settlement seeks to restrain only voluntary and not involuntary alienation, anticipation, etc., and contains no provision or restraint which would relieve her estate from the payment of her debts and liabilities. The restraint should be strictly construed and not extended beyond its terms. It does not include the income from the real estate involved. There is no condition, penalty, or limitation over in case the life tenant should convey

or attempt to convey the property involved. The Statute of Uses or the doctrine of passive trusts, or both, operate to execute the legal titles in the life tenant and her issue. If the rule in Shelly's case applies the tenant for life takes the fee-simple, her husband his estate by the curtesy initiate, and the restraint is void.

*Mr. E. H. Thomas* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. It will be observed that the bill makes three sets of parties defendants in the suit, who have different relations with the complainants, and separate interests in the controversy.

These are: First, Ella P. Gwynn, the life tenant, and her husband, who together made the note and joined in the execution of the trust deed to secure the same. Second, the trustee of the separate estate for the life of Ella P. Gwynn and the remainder to her issue living at the time of her death, created by the settlement of William G. H. Newman and wife. Third, the issue of the said Ella P. Gwynn, who also joined with her in the execution of the trust deed to secure the payment of the note executed by her and her husband; one of these being then, and now, a minor.

By joining all these parties in the one suit, the complainants seek, in one general decree, to recover upon the note as against the makers, to foreclose the mortgage as against each and all of the defendants and procure a sale of the interest of each in the premises, and to have a special decree as to the makers of the note for any balance that may remain after applying the proceeds of sale.

The suit involves the construction of the deed of settlement, and the allegations and prayers of the bill are founded upon views thereof that have been discussed at length, on the argument, with reference to many authorities.

These contentions are: First, that the restraint upon anticipation or alienation imposed upon the separate life

estate granted by Newman to his married daughter, Ella P. Gwynn, was in conflict with, and is avoided by, the provisions of the married woman's act of 1869. (R. S. D. C., Secs. 727, 728, 729.)

In other words, that the effect of these provisions was to create a complete separate, legal estate in married women, thereby putting them upon the same footing as men, and necessarily bringing grants to them within the common-law rule avoiding general restraints of alienation.

Second, that the settlement created a vested remainder in the issue of the said Ella P. Gwynn, that is to say, such of them as may be living at the time of her decease — taking the word *issue,* "living at the time of her death," as synonymous with *children* then living, etc.; with remainder over to the said settlor, his heirs and assigns, contingent upon the death of the last of the said children of Ella P. Gwynn, before her decease.

Third, that the vested remainder in the children of Ella P. Gwynn, though subject to divestiture by the pre-decease of the last one of them, is an estate which they could convey by the trust deed, and which may be sold under foreclosure notwithstanding the uncertainty of its future enjoyment.

2. We cannot agree to the first of these contentions, which goes not only to the abolition of any restraint upon alienation contained in a settlement upon a married woman, but also to the settlement of the equitable estate itself. The proposition as maintained in the brief of counsel is: "The acts, in other words, practically destroy such restraints upon equitable separate estates of married women, and perhaps such estates, in favor of the statutory separate estates thereby created." The married woman's separate property act has been in force for more than thirty years in this District, and has been the subject of interpretation in many cases, but, so far as we are advised, no case has before arisen involving this contention.

On the other hand, the general opinion of the bar, as indicated by the frequent execution of deeds and wills, sim-

ilar in purport to the instrument under consideration here,. and the common acquiescence in their validity, during that period, has been opposed to the appellants' contention.

Our view in respect of this contention accords with the general scope and purpose of the act which was declared by Mr. Justice Morris, speaking for this court, in a case involving the right of husband and wife to contract with each other, as follows:

" That statute was confessedly intended to emancipate the property of married women from the control over it which was given to their husbands by the common law; and it should not be construed in such manner as to give husbands greater influence over their wives and greater power over their estates than they had before the statute. And yet this would be the legitimate and inevitable result of the enactment if its effect was to remove all limitation upon the power of husband and wife to contract with each other. This limitation is based upon very different grounds of public policy from those which, before the statute, restricted a married woman's contracts with third persons.

" The effect of the common law was to suspend the wife's control over her estate, and to vest it to a great extent in the husband. This control the statute restores to her. But the statute does not seek to modify the relation of husband and wife to each other. It does not, for example, affect the rule of the common law which makes them incompetent to testify for or against each other. It does not affect his liability to provide for her support and maintenance; nor does it abolish the rule that the wife's earnings during marriage, if she has any, belong to her husband. *Seitz* v. *Mitchell,* 94 U. S. 580; *Kesner* v. *Trigg,* 98 U. S. 50. In other words, the sole effect of the statute is simply to abolish the control of the husband over her separate estate, and to dispense with the necessity of his intervention in regard to it in dealing with third parties." *McCormick* v. *Hammersley,* 1 App. D. C. 313, 317. See also *Merchant* v. *Cook,* 7 App. D. C. 391, 403. In the case last cited a restraint upon alienation was upheld; but the settlement in question antedated the married woman's act of 1869.

The rule of construction that has obtained in respect of such statutes, as of most others in derogation of the common law, has generally been a strict one; hence, as regards the inclusion of special species of property, and the modification of some of the principles having special application to the marital relations, referred to in the extract above quoted, they have usually been regarded as limited in their application, and not to be extended save by their express terms, or a plain, necessary implication therefrom.

Some of the conditions that led to the creation of the equitable separate estate of the wife, before the modification or abolition of the harsh rule of the common law by modern statutes, continue to exist because they are inherent in the marital relation. The same reasons that then existed for the protection of the wife from the rapacity and improvidence of the husband, and raised up the equitable doctrine that the settlement of such an estate could be accompanied with a restraint upon anticipation or alienation, as long as the coverture continued, are equally as strong as when that doctrine was first established.

For those considerations, as the statute does not expressly prohibit, or put an end to, the creation of these time-honored equitable separate estates by deed or will, with their recognized limitations, courts of equity will not raise up an intent so to do by implication.

The more reasonable view of such enactments is, that they were intended to enlarge the legal rights and privileges of the wife, without in any manner interfering with or affecting such equitable separate estates as may be created for her benefit and security, by deed or devise.

Whilst our attention has been called to no authority directly in point, the doctrine that we have announced is strongly supported by a number of decisions in analogous cases arising under statutes of the same general nature, some of which we cite. *Musson* v. *Trigg,* 51 Miss. 172, 182; *McConnell* v. *Lindsay,* 131 Pa. St. 476, 490; *Pennsylvania Co.* v. *Foster,* 35 Pa. St. 134, 136; *Phillips* v. *Graves,* 20 Ohio St. 371, 388; *De Vreis* v. *Conklin,* 22 Mich. 255, 259; *Snyder* v. *Webb,* 3 Cal. 83, 88; *Short* v. *Battle,* 52 Ala. 456, 460.

As the deed settling the trust excludes the husband from any interest whatsoever in the estate, and as we have upheld the binding obligation of the provision therein declaring that the life tenant shall " have no powers to alienate, transfer, sell or encumber " the premises, " nor to dispose of the same by deed or will, nor by any mode of alienation or anticipation," it follows that the trust deed, so far as Ella P. Gwynn and her husband are concerned, is without authority and void.

3. We have assumed, in the foregoing conclusion, that the settlement created nothing but a life estate for the benefit of Ella P. Gwynn. Such, unquestionably, was the intention of the settlor; and the subsequent words, " issue living at her death," etc., must· be given effect as words of purchase and not of limitation. *Green v. Green,* 23 Wall. 486. .

Both parties agree that the limitations of the trust raise an estate in remainder in the issue of Ella P. Gwynn, but disagree as regards the character of that remainder.

The contention of the appellants has been heretofore stated. The counter proposition of the appellees is, that the estate created is a contingent remainder in such of the children of Ella P. Gwynn as shall be living at the time of her death.

In determining this question there is no occasion to look beyond the authorities that control in this jurisdiction. By these, certain general rules of construction have been firmly established: 1. Estates shall be held to vest at the earliest possible period unless there be a clear manifestation of intent to the contrary. 2. A remainder will not be construed to be contingent when it can be taken to be vested. 3. Adverbs of time, as after, etc., are to be construed to relate to the time of the enjoyment of the estate and not the time of vesting in interest. *Croxall v. Shererd,* 5 Wall. 268; *Poor v. Considine,* 6 Wall. 458; *McArthur v. Scott,* 113 U. S. 340, 378; *O'Brien v. Dougherty,* 1 App. D. C. 148; *Richardson v. Penicks,* 1 App. D. C. 261, 264; *Craig v. Rowland,* 10 App. D. C. 402, 415; *Hauptman v. Carpenter,* 16 App. D. C. 524, 528.

According to those authorities, also, and by general agreement, a vested remainder is one in which a present interest passes to the grantee, though to be enjoyed in the future, and is fixed to remain to a determinate person after the particular estate is ended.  The remainder passes out of the grantor at the creation of the particular estate and vests in the grantee an immediate, fixed right of future enjoyment.

A remainder is contingent when limited to an uncertain person, or upon the happening of an uncertain event, that is to say, when limited to a person not in being, or not ascertained, or limited to take effect upon an event which may never happen, or which may not happen until after the preceding particular estate is ended.

Applying the foregoing tests, we are of opinion that the deed of settlement operated to create a vested remainder in the issue of Ella P. Gwynn, who were then living, subject to be opened to let in any child that might be born to her afterwards.  And this conclusion would not be affected by any determination of the questions, if such should become necessary, whether by " issue living at her death," are meant the children of Ella P. Gwynn, as a class, or whether " issue " includes the children of a child who may pre-decease the life tenant.

The character of the first limitation in remainder would not be affected by a determination that the settlor meant the children as a class, and that the estate shall pass under the succeeding limitation in the event that no one of them should survive their mother, any more than by a conclusion, that, upon the death of a child, its issue would take the parents' share, or would share equally with surviving children of the life tenant.

No children have been born to Ella P. Gwynn since the settlement was made; none have died, and all are parties to the suit.

The character of the estate created in them must be tested by their present capacity to take should the life estate be suddenly terminated.  That they may not survive the life

8

tenant and, therefore, never come into the enjoyment of the estate, is immaterial. It is not the uncertainty of the enjoyment, but the uncertainty of the right that distinguishes the contingent from the vested remainder.

The limitation in remainder is to persons in being and of certain ascertainment. The limitation of the preceding life estate is an event that must certainly happen in the ordinary course of nature, and that may, and most probably will, happen before the death of her issue or the survivor of them.

Upon the sudden termination of the preceding estate they would at once come into the enjoyment of the remainder.

It only remains to add, that the mere vesting of the legal title in a trustee offers no ground for a different construction.

4. There seems to be little, if any, question but that the word "issue," when used in a deed or will, includes descendants unless the context or superadded words of qualification or limitation, manifest a different intention. *Leigh* v. *Norbury,* 13 Vesey, 340; *Wistar* v. *Scott,* 105 Pa. St. 200, 215; *Adams* v. *Law,* 17 How. 417, 421. In the last case the word was restrained to the immediate offspring, or children, but for the reason that such meaning was clearly indicated by words of qualification and by the general purpose apparent in the deed of settlement.

As before stated, however, whatever meaning might be given to the words, as used in the instrument under consideration, could have no effect upon the character of the remainder thereby created. In the view that we have taken of the disposition of the present appeal, it is not only not necessary, but would be improper, to undertake the construction of the deed in this respect. Before the institution, or conclusion of proceedings in another suit, changes may occur by death of one or more of the parties, that would raise up new interests and introduce new parties to the litigation.

It is sufficient to say, only, that as the instrument did create a vested remainder in the issue of Ella P. Gwynn, who joined in the execution of the trust deed under which the foreclosure is sought, there was nothing to prevent their

conveyance of their interests, whatever they may ultimately amount to in the way of actual enjoyment. What they could convey outright, they could also convey in trust by way of mortgage; and the mere uncertainty whether the estate so conveyed, may be hereafter divested, in whole or in part, by the death of one or all of the remaindermen before the determination of the preceding estate, would seem to furnish no sufficient ground for the refusal of foreclosure and sale in a seasonable and proper proceeding for that purpose, notwithstanding it might affect the price to be realized from such sale. *Bryan* v. *May,* 9 App. D. C. 383, 389.

5. Notwithstanding our general agreement with the contention of the appellants, in respect of the character of the estate in remainder, it does not follow that the decree dismissing their bill should be reversed.

It is not seriously contended that the bill should not have been dismissed as regards the infant remainderman.

The dismissal as to Ella P. Gwynn and Raphael C. Gwynn was likewise imperative. The deed of trust, as we have seen, was, as to them, a nullity. He had no interest whatever to convey, and she had none that she was not prohibited from conveying. With no lien, or other equity whatsoever to support the bill as to them, the court of equity was without jurisdiction, as against objection made, to proceed to render a decree against them for the debt evidenced by their note.

As to the remaining defendants, the demurrer was correctly sustained because the bill was bad for multifariousness. It joins and confounds matters of complaint against several distinct parties, as has been pointed out, presenting demands of a distinct and independent nature against the several defendants. Story's Eq. Pl., Sec. 271; Adams' Eq. 310; *Dial* v. *Reynolds,* 96 U. S. 340; *Brown* v. *Guarantee Trust Co.,* 128 U. S. 403, 412.

The primary object of the bill was to establish the debt against the makers of the note and foreclose the lien of the trust deed upon the life estate of Ella P. Gwynn. The fore-

closure upon the estate in remainder was incidental and upon
that theory only was maintainable over objection.   There
being no lien upon the life estate, the demand and remedy
against the several sets of defendants were distinct and en-
tirely independent of each other.

For the reasons given the decree will be affirmed with costs,
but so modified as to show a dismissal of the bill without
prejudice to the institution of other and further suits in the
premises, as the complainants may be advised.   It is so or-
dered.                     ·                    *Affirmed.*