## Nathaniel Ross and another v. Edward C. Walker.

*Re-opening case: Exception: Acquiescence.* The re-opening of a case after both parties have rested, will not be considered as a ground of error where no exception has been taken and both sides appear to have acquiesced in the course adopted by the court.

*Promissory notes: Married women: Debt of husband.* In an action upon a promissory note executed by a married woman and her husband, where the defense insists that the note was entirely without consideration, and the only proof of consideration introduced on the other side tends to show that the note was given on account of a precedent debt of the husband, it is error to submit the case to the jury as against the wife; such a state of the proofs brings the case clearly within *De Vries v. Conklin, 22 Mich., 255.*

*Submitted on briefs October 28. Decided January 12.*

Error to Wayne Circuit.

*J. W. A. S. Cullen* and *G. V. N. Lothrop,* for plaintiffs in error.

*Walker & Kent,* for defendant in error.

GRAVES, CH. J.

This action was commenced by Jane Williams against the plaintiffs in error, by declaration containing the common and money counts, to recover on a note, of which the following is a copy:

"$900.　　　　DEARBORN, Mich., April 1, 1871.

"I promise to pay Jane Williams or heirs the sum of nine hundred dollars ($900), to be paid as follows: fifty dollars every six months, commencing April 1, 1871, until the above amount is paid, with interest at the rate of seven per cent. per annum.

"(Signed)　　　　NATHANIEL ROSS,
ELIZABETH ROSS."

Mrs. Williams died, and Mr. Walker being appointed administrator with the will annexed, her death was sug-

gested of record, and he was admitted to prosecute the cause. The plaintiffs in error separately pleaded the general issue, and gave notice of special matter of defense. The trial was by jury. The grounds of defense were: *first*, the coverture of Mrs. Ross, and the irrelation of the note to her sole property; and, *second*, want of consideration as to both and each of the signers. The execution of the note, not having been questioned on affidavit, was of course not contested. The defendant in error submitted the note in evidence and rested. The plaintiffs in error, by their counsel, then stated that they should merely give in evidence due proof that from a time prior to the giving of the note, and continuously to the time of the trial, the defendant, Elizabeth, was the wife of the other defendant, and thereupon it was admitted by the plaintiff below, that the then defendants intermarried about 1859, and that such relation had continued without interruption to the time of the admission. Upon this admission the defendants below rested, and they at once requested the court to direct the jury to find against the plaintiff, for the reason that a joint recovery could not be had on account of the admitted disability of Mrs. Ross, nor a recovery against her husband alone upon the declaration, which laid a joint liability. They further asked the jury to be instructed that the proof of Mrs. Ross' coverture cast upon the plaintiff the burden of showing such consideration as would validate her undertaking notwithstanding her coverture, and that the existence of such a consideration was not subject to be implied from the bare fact of her having signed the note. The court declined to instruct so, and decided to permit the plaintiffs in error to adduce evidence on the question of consideration, and in support of any other defense, and declared the case re-opened.

The first assignment of error is on this ruling. It is very clear this charge of error cannot prevail. No exception appears to have been taken, and both sides seem to have acquiesced in the course adopted by the court. Imme-

diately upon the ruling, each side went into evidence at large concerning the merits of the defense, and whether the point made might or might not have been sustained if excepted to and not obviated by acts of waiver, the plaintiffs in error are not now in a position to complain. We intimate no opinion upon the substance of the proposition which the counsel for the plaintiffs in error stated, nor whether the ruling was or was not so much matter of discretion on the trial as to exclude it from review on writ of error.

Passing this point we come to the substantial questions raised. But, in order to see them with any distinctness, it is needful to have under view some of the circumstances which tended more or less to define and explain the controversy. These circumstances the court below was in a situation to observe as the case unfolded and advanced on the trial, and the rulings can be more satisfactorily examined if seen as they appeared there.

The evidence conduced to show these facts, among others: that at the time Mrs. Ross married, one Michael McFadden, her uncle, and a man of some means, lived in Dearborn, and owned a farm there; that after her marriage she and her husband lived together on this farm for several years, and that this uncle staid with them; that the relations between him and them were close and intimate; that he was accustomed to call on her to write and perform various little acts of business for him, and that she was in the habit of doing such things when he requested; that he assisted them to some extent, and that some money dealings occurred between them; that about 1867 Mr. Ross bought twenty-two acres of land, and borrowed money of Mr. McFadden to pay for it; that about the same year Mrs. Ross bought of Mr. McFadden the farm where they lived, for three thousand dollars, paying one thousand dollars down, and securing by mortgage two thousand dollars, payable in yearly installments of three hundred dollars in cash, or, under verbal understanding, in keeping him if he chose to

board with them; that Mrs. Williams, the payee named in the note, was a sister of Mr. McFadden, and lived near; that she had two daughters, one now recently deceased, and the other, Amelia Larkins, one of the witnesses in the case; that Mrs. Williams was accustomed to receive pecuniary assistance from her brother, Mr. McFadden, and sometimes through the hands of the niece, Mrs. Ross, and sometimes through those of Mr. Ross; that the note in suit was drawn up by Mrs. Ross, at the instance of Mr. McFadden, and that she then signed her own and her husband's name to it, and carried it to Mrs. Williams; that Mr. McFadden died September 30th, 1871, leaving a will dated some time before the conveyance of the farm; that Mrs. Ross was not aware of the provisions of the will, but ascertained, when her uncle died, that, besides giving her some small things, the will specified as a gift to her the same farm she had bought of him; that the mortgage she gave on it had then been paid except a portion of the two thousand dollars which was to be paid in cash or in boarding him; and that 'the money borrowed by Mr. Ross had been some time paid when Mr. McFadden died.

Mr. and Mrs. Ross both testified, and they agreed in all substantial particulars as to the history of the note. Their explanation is, that Mr. McFadden observed to Mrs. Ross that his sister, Mrs. Williams, was calling on him for money so often that he could not stand it, and that he felt obliged to limit her to a certain sum; that he then asked Mr. Ross if he would be willing to give a note, to make it appear as though he was paying the money, which, as he said, would prevent her from calling on him, McFadden, so much; that McFadden asked her if she would draw the note, or asked her husband if she would draw it; that her husband said she could draw it, whereupon she inquired how she should do it, and whether she should put value received in it, and he replied, "No, you are getting no value;" that she then drew it as it appears.

Each explicitly denied the existence of any consideration in any form, whether as proceeding from Mrs. Williams or Mr. McFadden, or as based on or as springing from any business transaction with Mr. McFadden or anybody else. They respectively insisted that the giving of the note was a pure act of accommodation to Mr. McFadden, done at his request, and to save him from the importunities of Mrs. Williams. Mrs. Ross testified that when she handed the note to Mrs. Williams she stated that her uncle sent it, and that he would make it all right. The only other witness called was Amelia Larkins, the daughter of Mrs. Williams, and niece of Mr. McFadden. She was called for the defendant in error, and testified that she was present when Mrs. Ross delivered the note, and that as she handed it over she observed that "she brought up this note she had made out with uncle for money they had borrowed."

On cross-examination, she testified that Mrs. Ross, on handing the note over, used the expression, "there is the note uncle and her made out for the money Mr. Ross had borrowed of Mr. McFadden," and the witness added, that Mr. and Mrs. Ross were both present, and that the latter gave to the witness a dollar to buy stamps for the note, saying, at the same time, there were none in Dearborn:

Miss Larkins further testified to several small payments on the note by Mr. Ross, in cash and articles from the farm, and that he told her mother they were for pay on that note of one thousand dollars he was to pay to her. At another time she said her uncle brought fifty dollars, and stated that Mr. Ross sent him; that in speaking of the one thousand dollars, Mr. Ross said it was money he borrowed of Mr. McFadden to buy land with; that after Mr. McFadden's death Mr. Ross called and desired her mother to give up the note, when, on her refusing, he threatened litigation.

Mr. and Mrs. Ross explicitly contradicted Miss Larkins

as to giving money for stamps, and flatly denied having stated any thing to the effect that the note was given for or on account of money borrowed.

Under objection the defendant in error was allowed to put in evidence the report of the commissioners to adjust claims against the estate of McFadden, for the purpose of showing that Mrs. Ross made claim for money borrowed and for services and other matters, and evidence was also admitted under objection to show who were the relatives Mr. McFadden left.

It would be tedious and is not considered necessary to repeat the requests, charges and refusals.

The defendant in error urged, among other things, that there was evidence that the note concerned separate property of Mrs. Ross, and also evidence of consideration as against both her and her husband; and the plaintiffs in error disputed every part of this claim. The court allowed the jury to find upon the assumption that, as claimed by defendant in error, there was evidence in the case tending to show consideration for Mrs. Ross' promise, and also evidence tending to connect the note with her separate property.

In this the court erred. The record fails to disclose any evidence conducing to show any consideration as against Mrs. Ross, or any relation of the note to separate property possessed by her. All the proof given by the plaintiffs in error was in denial of all consideration as to each of them, and in denial of the existence of any connection of this note with property of Mrs. Ross, and the only evidence given for the defendant in error to explain the consideration, and show how the note came to be made, and ascertain what relation if any it bore to the property interests of the makers, with the exception of some remote subsidiary matters of no influence against the tendency of the main proof on the same side, came from Miss Larkins. And the testimony she gave was not aimed at all to show any consideration as to Mrs. Ross, or to show that the note

had any thing to do with any separate property of Mrs. Ross. On the contrary, her testimony went to exclude any inference of the sort, and was aimed to make out that the real consideration was a debt from the husband to McFadden, and which McFadden arranged should be paid by means of the note to Mrs. Williams, instead of being paid to himself. The effect of this evidence if believed,—and *without* it there was no case,—was to separate Mrs. Ross and her property from the note. In view of the circumstances as they appear here, and especially in view of the evidence of Miss Larkins, there was ground for taking the sense of the jury as to whether the husband's promise was on consideration. But the plaintiffs in error were entitled to a direct charge that no case was made against Mrs. Ross. The cause was clearly within *De Vries v. Conklin, 22 Mich., 255,* and *West v. Laraway, 28 Mich., 464;* see also, *Harrington v. Thompson, 9 Gray, 65.* The other points become unimportant.

The judgment should be reversed, with costs, and a new trial ordered.

The other Justices concurred.