ROBERT F. EDWARDS AND ANN EDWARDS v. ANDREW McENHILL AND THOMAS MOORE.

*Married woman's contract.*

In Michigan married women have no general capacity to make contracts, their common law disabilities being only partially removed by the Married Woman's Act.

One who relies upon a contract made by a married woman must show the facts in order that it may appear whether she had capacity to make it. So *held* where the contract relied on was one of partnership between herself and her husband.

A was the successful bidder for certain carpenter work, and B & Co., for certain masonry. It was arranged, for the convenience of the party for whom the work was to be done, that A should take a contract for the whole, though B should do the masonry, whereby A stood in the place of surety for B. A was afterwards garnished by judgment creditors of B, but B refused to allow the amount of the judgments to be applied on what was due him from A, claiming that the judgments had been recovered against him individually while his contract was in the name of a firm, his wife being his partner. A refused to pay B unless he allowed the judgments, and B sued him. *Held*, that an instruction that if A had had an opportunity to know that B's bid was in the name of a firm he was estopped from denying that he knew it, was error.

Error to Wayne. (Chambers, J.) June 14.—June 22.

ASSUMPSIT. Defendants bring error. Reversed.

*Alex. D. Fowler* for appellants. At common law, a married woman could not be a partner in business with any one: *Glover v. Alcott* 11 Mich. 471; *Jenne v. Marble* 37 Mich. 323; 2 Bish. Mar. Women § 435; 2 Colly. Partnership 1008; Story on Partnership §§ 12, 306; Dixon on Partnership § 35; the Constitution and statutes are clearly against her right to make a mere personal obligation, unconnected with property, and not charging it; so that she cannot become personally bound jointly with her husband, nor as a surety, by mere personal promises: *De Vries v. Conklin* 22 Mich. 255; *Emery v. Lord* 26 Mich. 431; *West v. Laraway* 28 Mich. 464; *Ross v. Walker* 31 Mich. 120; *Kitchell v. Mudgett* 37 Mich. 81; *Carley v. Fox* 38 Mich. 387; *Russel v. Savings Bank* 39 Mich. 671; *Johnson v. Sutherland* 39 Mich. 579; *Gantz v. Toles* 40 Mich. 725; *Kenton Ins. Co. v. McClellan* 43 Mich. 565; *Reed v. Buys* 44 Mich. 82; anything tending to destroy the value and confidence of the marital relation is against public policy: *Snyder v. People* 26 Mich. 106; *Randall v. Randall* 37 Mich. 571; there is nothing to authorize a husband to sue his wife to enforce an executory contract: *Bunt v. Jones* 45 Mich. 392; *Chapman v. Kellogg* 102 Mass. 246; for a woman to enter into a partnership with her husband would subject her property to his control in a manner hardly consistent with the separation which it is the purpose of the Married Woman's Act to secure, and might subject her to an indefinite liability for his engagements; the property invested in such an enterprise would cease to be "her sole and separate" property: *Lord v. Parker* 3 Allen 127; *Plumer v. Lord* 5 Allen 460; 7 Allen 481: 9 Allen 455; when such business as milling may be carried on by the joint efforts and credit of the two, it must usually be considered in law the business of the husband, and its avails liable to the payment of his debts: Lindley on Part. p. 118 § 78; 1 Pars. Cont. 351; *Swasey*

*v. Antram* 13 Am. L. Reg. (N. S.) 577; *Bitter v. Rathman* 61 N. Y. 514.

*Adolph Sloman* for appellees. The Married Woman's Act enables married women in Michigan to contract with reference to their separate property, as though they were single : *People v. Horton* 4 Mich. 83 ; *Durfee v. McClurg* 6 Mich. 231; *Starkweather v. Smith* id. 380 ; *White v. Zane* 10 Mich. 333 ; *Farr v. Sherman* 11 Mich. 33 ; *Watson v. Thurber* id. 457 ; they can carry on boarding houses and engage generally in business : *Tillman v. Shackleton* 15 Mich. 705 ; *Rankin v. West* 25 Mich. 195 ; *Campbell v. White* 22 Mich. 178 ; *Powers v. Russell* 26 Mich. 179 ; a wife can make gifts directly to her husband : *Durfee v. McClurg* 6 Mich. 223 ; *Penniman v. Perce* 9 Mich. 509 ; or receive them from him : *Burdeno v. Amperse* 14 Mich. 94; *Ransom v. Ransom* 30 Mich. 328 ; she can carry on the butchering business with her husband as her agent : *Rankin v. West* 25 Mich. 195 ; *Dayton v. Walsh* 47 Wis. 113 ; she can contract with him except as her power is limited by statute : *Hamilton v. Hamilton* 89 Ill. 349 ; *Beard v. Dedolph* 29 Wis. 236 ; *Hoxie v. Price* 31 Wis. 82 ; she may be his creditor, and when the debt is bona fide he may prefer her to the exclusion of all his other creditors : *Pierce v. Rehfuss* 35 Mich. 53 ; *Hill v. Bowman* id. 191, 209 ; *Allen v. Antisdale* 38 Mich. 229 ; she may sue him at law or in equity, in regard to her separate property : *Markham v. Markham* 4 Mich. 305; *Emerson v. Clayton* 32 Ill. 495 ; *Chestnut v. Chestnut* 77 Ill. 346 ; *Cannel v. Buckle* 2 P. Wms. 243 ; or a firm of which he is a member : *Devin v. Devin* 17 How. Pr. 514; she can form a co-partnership with her husband : *In re Kinkead* 3 Biss. 405 ; *Penn v. Whitehead* 17 Gratt. 503; see *Cosio v. DeBernales* 1 C. & P. 266 ; 1 Pars. on Partnership 25.

Cooley, J. Defendants are in partnership as carpenters and builders in the city of Detroit. Plaintiffs are husband and wife and claim to be in partnership as masons and plasterers in the same city. In the year 1881 the board of

education of that city, having occasion for certain carpenter and mason work upon two of their school buildings, advertised for proposals. Defendants sent in a bid for the carpenter work, and R. F. Edwards & Co., which is the name in which plaintiffs claim to be doing business, sent in a bid for the mason work. These were the lowest bids for the two kinds of work respectively. Mr. Edwards and Mr. McEnhill met, apparently without concert, at the office of Mr. Utley, the secretary of the board, and were then informed that the board preferred to have one contractor for the whole work. It was suggested that defendants take the contract for the whole work and allow Edwards to do the mason work, and Mr. McEnhill expressing his assent, the board made its contract for the whole work with defendants.

It is testified by Mr. Edwards and Mr. Utley that the Edwards bid in the name of R. F. Edwards & Co., was present on the table at this time, but McEnhill swears that he never saw it, and knew nothing of Edwards' having any partner. He says he supposed his dealings were with Edwards alone. Edwards disputes this, and claims that in their talk together at this time he spoke of R. F. Edwards & Co. as the party putting in the bid, and the party to do the work under the arrangement made with Mr. Utley.

The parties respectively went on and performed the work, and defendants paid Mr. Edwards the major part of what would be payable for the mason work and plastering. Before it was all paid several persons had brought suit against Robert F. Edwards and garnished defendants as his creditors and had recovered judgments in the garnishee suits. Edwards refused to recognize these judgments, or to allow the amounts upon the contract with defendants, for the reason that the suits were against him alone, while the contract, as he claims, was with R. F. Edwards & Co. Defendants aver that they never heard of any such firm as R. F. Edwards & Co., or of the wife of Edwards being in partnership with him, until after these proceedings in garnishment, and they refused to make payment on the

Edwards contract unless the amount of the judgments against them was allowed. This suit was therefore instituted.

The price which was to be paid for the mason and plaster work was not in dispute, and so far as concerned the facts, the case turned on the question whether the arrangement made in Mr. Utley's office was to be deemed an arrangement between the defendants and R. F. Edwards & Co., or between them and Robert F. Edwards. Among the instructions given by the circuit judge were the following:

"If the jury believe the testimony of Henry M. Utley, secretary of the board of education, that during the conversation the bids of R. F. Edwards & Co. for doing this work were spread upon the table before and in the presence of Mr. McEnhill, and his attention was called to the same, or if his attention was not called to the same but he had the opportunity of examining the bid before agreeing to pay for the work done under the same, and he did not look at them, though he might and could have done so, had he wanted to, he is now estopped from saying that he did not know that Edwards & Co, were the bidders.

"If the jury believe the testimony of Mr. Utley as to the conversation had at his office, and find that the defendants paid the plaintiffs or Robert F. Edwards any money on the work done under the bid, that these amounted to a recognition of the agreement that the defendants would pay the plaintiffs for the work done under the bid as put in; that it was the duty of the defendants, when they agreed to pay for the work to be done under the Edwards & Co. bid, to ascertain to whom they were to pay for the same, and with whom they made the agreement; that if they shut their eyes to this necessity, they cannot now be heard to complain when it appears that the bid was put in by the plaintiffs and they are sued by them."

We cannot concur in these instructions. The question involved is, who were the contracting parties in the contract made in Mr. Utley's office. This is a question of understanding and intent, and the contract is no more to be made out by applying an estoppel to defendants than to the plaintiffs. It was no more the business of the defendants to make sure that they understood whom they were

dealing with than it was for Edwards to make certain that he clearly apprised them. Defendants had nothing to do with the bid Edwards had handed in, except to add the amount of it to the amount of their own in making their contract; and even this was for the convenience of the board and not of themselves. They did not understand they were to have anything to do with the work of the mason and plasterer, except as by including it in their contract they would become responsible for its being done. But in that respect they would stand in the place of sureties for the person or persons doing it.

It would be the most natural thing in the world for McEnhill, under the circumstances, knowing Edwards as a man who took such contracts, and not being aware of any associate in business, to assume that he had made the bid in his own name. It would be the last thing in the world to occur to him that Edwards not only had a partner in this business, but that this partner was his wife; and if he had been notified of it, as nobody pretends that he was, he would have been likely to be somewhat surprised. That a mason should take his wife into partnership in his business may well excite surprise, and McEnhill, if told of it, might not unnaturally have queried in his mind what it could mean and what good and honest reason there could be for it. Such an arrangement is so very unusual, not to say extraordinary, that the parties to it in common fairness when dealing with others whose pecuniary interests may be affected, ought to leave them in no uncertainty concerning it, and not allow them to fall into traps, as defendants seem to have done if plaintiffs sustain their case. This is the more obligatory upon the plaintiffs when, as seems to have been the case here, the wife does not appear in the business except when the dues are to be collected or when creditors are to be prevented from reaching them.

. Defendants raise the question that husband and wife are incapable in law of becoming partners in business. The same question has been suggested before, but not under circumstances requiring an opinion from us upon it. Nor is

any called for in the present case, as it is quite certain that if such a partnership can be formed the facts to show its actual existence between these parties were not proved. The only evidence given on this subject is that of the parties themselves that they are in partnership. The agreement to form it, and the circumstances under or in view of which it was made, are not shown.

It seems to have been overlooked on the part of the plaintiffs that married women in this State have no general capacity to make contracts. The statute removes the common-law disabilities only partially; and it therefore becomes necessary, when a contract by a married woman is counted on or relied upon, to show the facts, that it may be seen that they were such as would enable her to make it. Under a variety of circumstances this has been explained under the following among other cases: *Tillman v. Shackleton* 15 Mich. 447; *Campbell v. White* 22 Mich. 178; *De Vries v. Conklin* 22 Mich. 255; *Powers v. Russell* 26 Mich. 179; *Emery v. Lord* 26 Mich. 431; *West v. Laraway* 28 Mich. 464; *Ross v. Walker* 31 Mich. 120; *Gillam v. Boynton* 36 Mich. 236; *Jenne v. Marble* 37 Mich. 319; *Kitchell v. Mudgett* 37 Mich. 81; *Carley v. Fox* 38 Mich. 387; *Johnson v. Sutherland* 39 Mich. 579; *Russel v. Savings Bank* 39 Mich. 671; *Gantz v. Toles* 40 Mich. 725; *Kenton Insurance Co. v. McClellan* 43 Mich. 564; *Buhler v. Jennings* 49 Mich. 538. A reference to these cases must render it entirely unnecessary that we should discuss in this case the general purpose, intent or scope of the statute. It is sufficient to say now that a contract of partnership is the basis of the relation, and that to show the validity of the contract it is necessary to show the facts which under the statute give capacity to make it.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.